UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LUKE LAJQI,

     Plaintiff,

v.

                                             Case No.: 2:23-cv-1212-JLB-KCD

THOMAS PEPE,

     Defendant.

_____/

## ORDER

This is a defamation *per se* and intentional infliction of emotional distress action arising from a property dispute between Plaintiff Luke Lajqi ("Plaintiff," "Mr. Lajqi," or "Uke") and Defendant Thomas Pepe ("Defendant" or "Mr. Pepe"), who is proceeding *pro se*. Plaintiff alleges that he suffered reputational damage and emotional distress because of a harassment and intimidation campaign perpetuated by Defendant during that property dispute. Plaintiff moved for partial summary judgment as to his defamation claim. (Doc. 70). Defendant submitted a response in opposition (Doc. 73). After a careful review of the parties' briefings and the record, the Court concludes that Plaintiff's Motion for Partial Summary Judgment (Doc. 70) is due to be **DENIED**.

## BACKGROUND

Defendant's father, Eugenio Pepe, died in Lee County, Florida on December 30, 2020. (Doc. 1 at ¶ 6; Doc. 2 at ¶ 6). Defendant was subsequently appointed the

personal representative of his father's estate on October 4, 2021.[1]  (Doc. 51-3).  The estate included a piece of real property in Lee County, Florida (the "Property"). (Doc. 1 at ¶ 7; Doc. 2 at ¶ 7).  Defendant, as personal representative of the estate, and Plaintiff, a real estate professional, entered into a purchase and sale contract regarding the Property on or about May 3, 2022 (the "Contract").  (Doc. 1 at ¶ 8; Doc. 2 at ¶ 8; Doc. 69-1 at ¶ 5).  Defendant later refused to close on the transaction, and Plaintiff filed a civil suit seeking specific performance of the Contract.[2]  (Doc. 1 at ¶¶ 10–11; Doc. 2 at ¶¶ 10–11; Doc. 69-1 at ¶ 6–7).  Plaintiff's attorney also entered an appearance in the Estate Administrative Action to oppose any sale of the Property while the Specific Performance Action was pending.  (Doc. 1 at ¶ 7; Doc. 2 at ¶ 7).

Plaintiff alleges that, following these events, Defendant began an online harassment campaign against him that included false and defamatory statements. (Doc. 1 at ¶ 8–9; Doc. 70 at 2).  On December 22, 2023, Plaintiff filed a Complaint in this Court alleging claims for defamation *per se* (Count I) and intentional infliction of emotional distress (Count II).  (Doc. 1).  On January 29, 2024, Defendant filed an Answer.  (Doc. 6).

According to Plaintiff, Defendant (1) published false statements that Plaintiff was a criminal and committing fraud; (2) posted statements on Facebook and other

---

[1] This estate is currently subject to a probate administration action pending in Lee County, Florida entitled *In RE: Estate of Eugenio Pepe*, C.A. No.: 21-CP-1212 (the "Estate Administration Action"). (Doc. 1 at ¶ 7, Doc. 2 at ¶ 7).

[2] This civil suit is entitled *Uke Lajqi v. Thomas Pepe, as Personal Representative of the Estate of Eugenio Pepe*, Lee County C.A. 22-CA-3265 (the "Specific Performance Action").  (Doc. 1 at ¶ 11; Doc. 2 at ¶ 11).

social media that Plaintiff had committed real estate and bank fraud; (3) posted pictures of Plaintiff with a caption suggesting that Plaintiff had some part in murdering Eugenio Pepe; (4) used Facebook and LinkedIn to send messages to Plaintiff's friends and business contacts stating that Plaintiff had committed fraud and criminal conduct; and (5) sent messages to Plaintiff's mother stating that her son was about to be arrested for a criminal act.  (Doc. 1 at ¶ 15).  Defendant denied these allegations in his Answer.  (Doc. 2 at ¶ 15).

Plaintiff now moves for partial summary judgment regarding his defamation *per se* claim (Count I).  (Doc. 70).  Defendant filed a timely response.  (Doc. 73).

In support of his motion for partial summary judgment, Plaintiff provided a declaration that includes screenshots as exhibits.  (Doc. 69-1).  These screenshots depict the following:

1. A LinkedIn post from Thomas Pepe stating, "Luke Lajqi of Exit Realty commits Fraud on the court a 23-page motion to dismiss the case 22-CA-004118 as it contains fraud on the court and more criminality is now public record and on the court dockets. He can't hide anymore!"  (Doc. 69-1 at 7).

2. A post from Tommy Pepe on the "Throggs Neck" Facebook group stating, "Luke Lajqi from Bronx, NY Exit Realty commits Fraud on the court, bank fraud, wire fraud, conspiracy, rico, malicious prosecution, color of law violations, perjury, and more crimes in order to steal the house from underneath me and shield siblings Linda Cattano, Steven Pepe, and Michael Pepe as they all try and rob my father's estate."  (Doc. 69-1 at 8).

3. A text document with no apparent author stating, "Luke Lajqi the newly added defendant that was hidden all this time and his lien are total fraud. Luke Lajqi from Exit Realty has an invalid lien as he fights for a property has no rights too. I wish my father were here to see this but unfortunately for Luke Lajqi and Christopher DeCosta that got me. They have no idea what they are up against nor do they still don't get you can't steal, lie, and fraud the Judges then cry to them cause your feelings are hurt over my truthful posts. Hey, how about this stop stealing and 'frauding'. Did you ever think of

that. What a bunch of clowns." (Doc. 69-1 at 9).

4. A photo posted by "@tommy.pepe" on an unidentified platform with the caption, "Luke Lajqi Exit Realty Commits Fraud Upon the Court." (Doc. 69-1 at 10).

5. A notice from Realtor.com that Luke Lajqi received a recommendation from Thomas Pepe that states, "Luke [L]ajqi committed fraud on the court in my father['s] probate case where he submits a fraudulent complaint and lien. This realtor is a criminal." (Doc. 69-1 at 11–12). The notice appears to give the recipient the option to approve the review before it is published.

6. A photo of various individuals, posted by "Tommy Pepe," with the caption "The gang that murders my father. Commits every crime under the sun in his probate case. Let them all know you know…." (Doc. 69-1 at 13).

(Doc. 69-1 at 7–13).

Plaintiff also alleges that Defendant sent instant messages to his friends, colleagues, and family members accusing Plaintiff of criminality (Doc. 69-1 at ¶ 10(g)) and called the Exit Realty office to tell Plaintiff's broker that Plaintiff had committed crimes and "stolen from the dead" (Doc. 69-1 at ¶ 10(h)).

Defendant does not explicitly deny the legitimacy of these screenshots in his response to Plaintiff's motion for partial summary judgment. (Doc. 73). Rather, Defendant states in his response that he removed "all statements on the third-party sites" and deleted the Facebook accounts that he used to post. (Doc. 73 at 1).

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Id.*  "[A] mere scintilla of evidence" does not create a genuine issue of material fact, so a nonmoving party may not simply state that "the jury might, and legally could, disbelieve the moving party's evidence." *Hinson v. Bias*, 927 F.3d 1103, 1115–16 (11th Cir. 2019) (citation and internal quotation marks omitted).

Courts may not make credibility determinations or weigh the evidence when reviewing the record.  *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010) ("On summary judgment . . . [n]either [the Eleventh Circuit] nor the district court are to undertake credibility determinations or weigh the evidence.").  Instead, courts view evidence and draw all reasonable inferences in the nonmoving party's favor.  *Rojas v. Florida*, 285 F.3d 1339, 1341–42 (11th Cir. 2002).  But "an inference is not reasonable if it is 'only a guess or a possibility,' for such an inference is not based on the evidence but is pure conjecture and speculation."  *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1982).  In sum, the ultimate question for the Court on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251–52.

## DISCUSSION

### I.    Defendant adequately denied the allegations in the Complaint.

Plaintiff, in his Motion for Partial Summary Judgment, argues that Defendant failed to properly deny the allegations made within the Complaint (Doc.

1) in his Answer (Doc. 6), and that as a result, the allegations made in the Complaint are deemed admitted as a matter of law, warranting partial summary judgment in Plaintiff's favor.  (Doc. 70 at 6).

As an initial matter, Defendant is proceeding *pro se* in this litigation. Pleadings filed *pro se* are to be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted).

Under Federal Rule of Civil Procedure 8(b), a defendant's answer generally must "admit or deny the allegations asserted against it."  Fed. R. Civ. P. 8(b)(1)(B). A defendant who "intends in good faith to deny all the allegations of a [complaint]— including the jurisdictional grounds—may do so by a general denial."  Fed. R. Civ. P. 8(b)(3).  In making a general denial, "[n]o prescribed set of words need to be employed . . .; any statement making it clear that the defendant intends to put in issue all of the averments in the opposing party's pleading is sufficient."  5 Charles Alan Wright et al., *Federal Practice and Procedure* § 1265 (4th ed. 2024).  "A party that does not intend to deny all the allegations must either specifically deny designated allegations or generally deny all except those specifically admitted." Fed. R. Civ. P. 8(b)(3).

In his Answer, filed *pro se*, Defendant responded to each of Plaintiff's allegations in correspondingly numbered paragraphs.  (*See* Doc. 6).  In some cases, Defendant responded by merely stating the word "denied."  (Doc. 6 at ¶ 14, 16, 19– 23, 25–27, 29–31).  In other cases, Defendant stated the word "denied" and included

additional narrative. (Doc. 6 at ¶ 6–13). Liberally construing Defendant's Answer and considering that a general denial does not require any formal language, the Court finds that the Answer sufficiently states general denials and that Defendant has only admitted allegations relating to the parties' citizenship. (Doc. 6 at ¶ 1–2).

## II.    **Plaintiff's request for admissions is not deemed admitted.**

Plaintiff also alleges that Defendant failed to respond to a request for admissions served on April 26, 2024, and that the request for admissions is deemed admitted as a result. (Doc. 70 at 6). Further, because the request for admissions incorporated the allegations made in the Complaint, Plaintiff argues that the admissions leave no genuine dispute as to any material fact regarding liability for Count I. (*Id.*).

In support of this contention, Plaintiff filed an Appendix in Support of Motion for Summary Judgment (Doc. 69). One exhibit in the Appendix is a request for admissions dated April 23, 2024, with a corresponding certificate of service dated April 12, 2024. (Doc. 69-2). The Appendix also includes a declaration from Plaintiff's attorney, Christopher J. Decosta. (Doc. 69-3). The declaration states that Defendant was served with Plaintiff's request for admissions on April 12, 2024, and that Defendant failed to respond within 30 days. (*Id.*). Attached to this declaration is an exhibit titled, "Request for Admissions," dated April 23, 2024, with an attached certificate of service dated April 12, 2024. (*Id.*).

A docket review shows that Plaintiff filed a Request for Admissions with this Court on April 23, 2024.[3] (Doc. 46). This filing included a certificate of service dated April 12, 2024. (*Id*.). Later that day, Plaintiff filed a Notice to Withdraw Request for Admission (Doc. 47) dated April 23, 2024. As a result, the Court deemed this discovery filing withdrawn. (Doc. 48).

Plaintiff has failed to present any evidence that he served a request for admissions on April 26, 2024, as he claims in his Motion for Partial Summary Judgment. Instead, Plaintiff has provided the Court with requests for admissions dated April 23, 2024, with corresponding certificates of service dated April 12, 2024. (Docs. 46, 69-2, 69-3). The declaration provided by Plaintiff's attorney further muddies the water, as it states that Defendant failed to respond to a request for admissions served on April 12, 2024. (*See* Doc. 69-3). To make matters worse, Plaintiff failed to mention that the request for admissions filed on the Court's docket (Doc. 46)—which follows the same dating scheme as all of the requests for admissions that Plaintiff accuses Defendant of not responding to—was withdrawn at Plaintiff's own request (Doc. 47). The Court finds that, without more, Plaintiff's requests for admissions are not deemed admitted.

### III.    **Plaintiff has not provided sufficient evidence to establish defamation *per se* as a matter of law.**

"Under Florida law, a claim for defamation may be categorized in one of two ways: defamation *per quod* or defamation *per se*." *Centennial Bank v. ServisFirst*

---

[3] Plaintiff's counsel is reminded that discovery requests and responses should generally not be filed on the Court docket except as an attachment to a pending motion, when appropriate, or as directed by the Court. *See* Fed. R. Civ. P. 5(d)(1)(A).

*Bank Inc.*, 2019 WL 13037034, at *6 (M.D. Fla. Apr. 17, 2019). A publication rises to the level of defamation *per se* "if, when considered alone and without innuendo, it (1) charges that a person has committed an infamous crime; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession." *Daniels v. HSN, Inc.*, 2020 WL 533927, at *3 (M.D. Fla. Feb. 3, 2020); *see also Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953) (explaining that statements are defamation *per se* when "considered alone without innuendo, [they] contain] (1) charges that a person has committed an infamous crime, or (2) has contracted an infectious disease, or (3) they carry statements tending to subject a person to hatred, disgust, ridicule, contempt or disgrace, or (4) injure a person in his trade or profession"). In a defamation *per se* case, "consideration is given only to the 'four corners' of the publication." *Daniels*, 2020 WL 533927 at *3.

In support of its Motion for Partial Summary Judgment, Plaintiff provided screenshot exhibits of six social media posts. (Doc. 69-1). The screenshots depict the following:

1. A LinkedIn post from Thomas Pepe stating, "Luke Lajqi of Exit Realty commits Fraud on the court a 23-page motion to dismiss the case 22-CA-004118 as it contains fraud on the court and more criminality is now public record and on the court dockets. He can't hide anymore!" (Doc. 69-1 at 7).

2. A post from Tommy Pepe on the "Throggs Neck" Facebook group stating, "Luke Lajqi from Bronx, NY Exit Realty commits Fraud on the court, bank fraud, wire fraud, conspiracy, rico, malicious prosecution, color of law violations, perjury, and more crimes in order to steal the house from underneath me and shield siblings Linda Cattano, Steven Pepe, and Michael Pepe as they all try and rob my father's estate." (Doc. 69-1 at 8).

3. A text document with no apparent author stating, "Luke Lajqi the newly added defendant that was hidden all this time and his lien are total fraud.

Luke Lajqi from Exit Realty has an invalid lien as he fights for a property has no rights too. I wish my father were here to see this but unfortunately for Luke Lajqi and Christopher DeCosta that got me. They have no idea what they are up against nor do they still don't get you can't steal, lie, and fraud the Judges then cry to them cause your feelings are hurt over my truthful posts. Hey, how about this stop stealing and 'frauding'. Did you ever think of that. What a bunch of clowns." (Doc. 69-1 at 9).

4. A photo posted by "@tommy.pepe" on an unidentified platform with the caption, "Luke Lajqi Exit Realty Commits Fraud Upon the Court." (Doc. 69-1 at 10).

5. A notice from Realtor.com that Luke Lajqi received a recommendation from Thomas Pepe that states, "Luke [L]ajqi committed fraud on the court in my father[']s probate case where he submits a fraudulent complaint and lien. This realtor is a criminal." (Doc. 69-1 at 11–12). The notice appears to give the recipient the option to approve the review before it is published.

6. A photo of various individuals, posted by "Tommy Pepe," with the caption "The gang that murders my father. Commits every crime under the sun in his probate case. Let them all know you know…." (Doc. 69-1 at 13).

(Doc. 69-1 at 7–13).

Plaintiff also provided a Declaration of Luke "Uke" Lajqi. (Doc. 69-1). The declaration includes Plaintiff's interpretations of the attached screenshots (Doc. 69-1 at ¶ 10); other allegations of defamation (*id.*); an assertion that Plaintiff had no involvement in the death of Mr. Pepe's father (Doc. 69-1 at ¶ 11); an assertion that Plaintiff did not commit fraud, bank fraud, conspiracy, perjury, or any other criminal conduct in relation to the Property (Doc. 69-1 at ¶ 12); and an assertion that, as a result of Defendant's "harassment and defamation campaign," Plaintiff suffered severe emotional distress, embarrassment, and harm to his reputation in the community, specifically to his real estate business (Doc. 69-1 at ¶ 14).

"[F]or a document to be considered in support of or in opposition to a motion

for summary judgment, it must be authenticated by an affidavit that meets the requirements of the summary judgment rule." *Williams v. Eckerd Fam. Youth Alternative*, 908 F. Supp. 908, 911 (M.D. Fla. 1995). A screenshot raises two issues of authentication: the proponent of the screenshot must show that the printouts are from the website in question and were printed on a certain date. *Pohl v. MH Sub I, LLC*, 332 F.R.D. 713, 717 (N.D. Fla. 2019). Thus, Plaintiff could have properly authenticated the screenshots in this case by providing testimony of a witness who saw and printed the posting from the website in question, so long as the screenshots contained circumstantial indicia of authenticity (such as a web address and date). *See SMS Audio, LLC v. Belson*, 2017 WL 1533971, at *3 (S.D. Fla. 2017) (citation omitted) ("[C]ourts generally permit the authentication of web postings, bearing a web address and the date printed, by a witness who saw and printed the posting 'for the limited purpose of proving that the postings had appeared on the world wide web on the days that [the witness] personally saw the postings and printed them off the computer.'"); *Foreword Magazine, Inc. v. OverDrive, Inc.*, 2011 WL 5169384, at *3 (W.D. Mich. Oct. 31, 2011) ("[C]ourts generally hold that an affidavit of a witness, when viewed in combination with circumstantial indicia of authenticity (such as the existence of the URL, date of printing, or other identifying information) would support a reasonable juror in the belief that the documents are what the proponent says they area.").

Plaintiff failed to authenticate the screenshots in question. Plaintiff's declaration does not indicate that he saw and printed the postings from the

websites in question. (*See* Doc. 69-1). Additionally, none of the screenshots contain the necessary circumstantial indicia of authenticity. The first screenshot lacks a web address or the date of publication. (Doc. 69-1 at 7). The second, fourth, fifth, and sixth screenshots lack a web address. (Doc. 69-1 at 8, 10, 11–12, 13). The third screenshot lacks a web address, publication date, or any indication of where it was allegedly published. (Doc. 69-1 at 9). Thus, at this point, the screenshots cannot be considered in support of Plaintiff's motion for partial summary judgment. *Williams*, 908 F. Supp. at 911. Should the proper authentication be demonstrated at a later point in these proceedings, Plaintiff may again seek to rely on these screenshots.

Without the screenshots, Plaintiff's only evidence supporting his motion is his declaration stating that defamatory acts occurred. (Doc. 69-1 at ¶ 10). While "a non-conclusory affidavit . . . can create a genuine dispute concerning an issue of material fact, even if it is self-serving and/or uncorroborated," *United States v. Stein*, 881 F.3d 853, 858 (11th Cir. 2018), this alone is insufficient to satisfy Plaintiff's burden of establishing that the evidence is so one-sided that he must prevail as a matter of law. *Anderson*, 477 U.S. at 251–52.

*- Remainder of page intentionally left blank -*

12

**CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for Partial Summary

Judgment (Doc. 70) is **DENIED.**

   **ORDERED** at Fort Myers, Florida on January 24, 2025.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE